Today is number 25-10800, Smoothie King Franchises v. Best Smoothie, et al. May it please the Court, Jonathan Gowans on behalf of the appellants, Jean Victime, Monjove LLC, which is doing business as Best Smoothie. We would ask that this Court reverse the bench trial order conducted for two primary reasons on the merits as it pertains to two claims, one, a non-party consent judgment claim, and two, the trademark claims are what they, in discovery in that trial, refused to acknowledge our trademark claims and instead say non-fair competition claims for two primary reasons. One, the judge applied the wrong legal standard and misinterpreted and often ignored this circuit's ADT v. Northstar decision decided by William Pryor, as here a non-party was retroactively penalized without having been given any actual notice of a consent judgment from a prior case involving Smoothie King and one of its former franchisees, a Nigerian American named Wale Oyanuga, at a Lawrenceville location off of Sugarloaf. And secondly, we would ask that- What do you mean, what do you mean lack of notice? I don't understand. Yes, so- What do you mean? Yes, so as ADT case says, in order to bound a consent judgment against a non-party under Rule 65, that non-party must have had actual notice and also have been in privity with the enjoined party. So it's a two-pronged test that must be satisfied according to the ADT 11th Circuit decision. Well, weren't, didn't the district court make findings that your client had notice? No, not actual notice. So the- I didn't say actual notice, that your client had notice? Constructive notice through circumstantial evidence, which is not the proper test. He relied upon the United States v. Plains case, which is a civil tax evasion case out of the Middle District of Florida. They cited to a Eastern District of Missouri case for the proposition that you can bind a non-party to a prior consent judgment through circumstantial evidence. That case really didn't even involve a non-party. Mr. Plains was enjoined and prohibited from transferring funds. He received the TRO through his wife, Regina Plains, and hours later after receiving the TRO, he then transferred the funds anyway through his lawyers. And so in that particular Middle District case, the court found through circumstantial evidence that that actual notice be proven. But that is not even a minority view. That's like one out of maybe a couple of other cases that they can find throughout the entire 11th Circuit. Courts consistently, from this circuit, from the 9th Circuit to the 2nd Circuit, from Florida to New York, cases we've cited extensively, actual notice means exactly what it says. There's a reason why the authors of Rule 65 put the word actual in front of notice. Otherwise, what is the point of having it in there? And so we went back and forth with Judge Ray, and it was his view, he maintained consistently that he could prove actual notice through circumstantial evidence, and we just find that not to be the law, and we cited extensively the cases that say otherwise. He also erred and made the same mistake that the lower course made in the ADT case by conflating actual notice with privity. So he proved actual notice by saying through circumstantial evidence that my client was in privity, he had a family relationship, he was cousins with Wally Oyunuga, which was never proven. That was not true. My client is Haitian American. Perhaps if they wanted to say he was, if Wally Oyunuga was from France, okay, then maybe you might have a potential argument there. Anyone who knows the geographical history there. But in this situation, please interrupt. Let me stop you for a second. Please do. I know your contention that the district court erred with regard to notice, but the district court made a finding on actual notice, not constructive notice. He did. Am I wrong about that? He found for actual notice. Found actual notice through circumstantial evidence. Correct. Based upon circumstantial evidence. Okay. Not based upon the rule, which says you must actually have personally received notice. But those two things are not mutually exclusive, Mr. Goins. We would argue that ADT case says that it is. You need direct evidence of actual notice. You do. Yes, you do. You cannot have circumstantial evidence. What case says that? So we decided to... There's usually, I don't know of any or many principles of fact that you can't prove as equally by direct evidence or circumstantial evidence. I don't know why actual notice is not one of them. Maybe I'm mistaken about that. And on that point, while you're answering Judge Jordan's question, you also mentioned that the district court cited a Middle District of Florida case for that proposition. But that Florida case relied on an Eighth Circuit case that says exactly what Judge Jordan just says, that it's the Hill case from the Eighth Circuit. It says, like any other fact, notice of an injunction, like any other fact, may be established by circumstantial evidence, knowledge of an injunction. So I think you need to distinguish that while answering Judge Jordan's question as well. Yes. So the FTC case versus Equanuity Interactive, it's a Southern District of Florida case from 2021, found actual notice based upon one non-party as he saw it and was made aware of it by the enjoined party CEO. There are a number of other cases that we cited too as well that say that's true. So that was the district court case. Do you have anything that's... Yes. Yes. We also have the Eleventh Circuit case. Again, back to the ADT case, vacating the injunction against the non-party, which is what we're seeking here, as quote, the district court made no finding that Northstar knew about the injunction when it entered the asset purchase agreement with his predecessor. That is the Eleventh Circuit ADT case. Right. But here the court found that your client had actual notice. Through circumstantial evidence, not because he actually was told directly either by Smoothie King or by Wally Oyunuga. Well, page 24 of the district court's order, the district court says this, lastly, by their own admission, defendants have been on notice of the court's permanent injunction since September of 2021 when Smoothie King's counsel sent them a letter demanding their compliance. Yet defendants have continued to engage in the conduct at issue. Why isn't that direct evidence of actual notice, at least as of September of 2021? That's a great question. That's called retroactive notice. You're not allowed to do that. There are cases that speak to... It may not, but... Yeah. Hold on, Mr. Goins. Hold on. Yes. I'm going to let you respond. Why isn't that actual notice from September of 2021 forward? It is, but that's not the test. The test is at the time of the injunction being in place. That can't be the law. There's several cases that we've cited to that says that that is the law. You have to learn about the injunction... He's a non... Hold on. Yes. We can't speak at the same time. You have... A third party has to learn about an injunction the moment that it's entered? It can't... That's your position? Our position, based upon the ADT case, is that timing does matter, and there was a consent judgment entered into... If your client... I'm going to change the facts for you. This is a hypothetical, not this case. Your client doesn't know about the injunction when it's issued, but when he first tries to meet with, I forget how to pronounce his name, Mr. Oyenuga? Yes, sir. When he meets with Mr. Oyenuga, Mr. Oyenuga tells him about it, about the injunction, and gives him a copy of it three weeks later. Does he have notice? Yeah, that would be sufficient notice, because he has a copy of it, and he has it. But it's not at the time that the injunction was entered. Well, according to another case we cited, too, out of the Federal Circuit, Additive Controls versus Flow Data, they said for the person to be aware that he was acting in violation of the injunction, he would have to have been aware both that his acts were prescribed and that Cotton, the adjoined party, was bound by the injunction. Although the injunction issued in August of 1993, Harshman did not receive actual notice of the injunction until December of 1993. So yes, we do believe timing and the relevance of a timeline does matter. And in this situation, there was ample time to give my client's notice of the injunction. There was a preliminary injunction entered into in July of 2020. My client had already signed a purchase asset agreement the month earlier, in June of 2020, with the Oyunugas, to purchase certain assets of the Jet Smoothie business, including some equipment, ice maker, things that you need to make smoothies. And then the consent judgment was final as of October of 2020. So several months went by. My client's, and this is all on the record, he goes back to what then became the new Smoothie King that was owned, not, excuse me, operated under a new franchise that he got named Greg Thomas. Greg Thomas allows him to actually purchase additional equipment, items, and then Greg Thomas at another time comes back the following year and gives some additional equipment and other items to my clients. So there was ample time for my clients to have been aware, had he just been told that there was an injunction in place that somehow prohibited some tainted IP, which to this day is a little bit confusing because that's not quite been clear as to exactly what he took from Jet Smoothie that was somehow in violation of their intellectual property rights. Okay. You're running out of time and I'd like you to address the question concerning the scope of the injunction. Sure. The scope of the injunction. So Judge Jill Pryor has actually already addressed this in Baldwin versus Express Oil Change, in which the injunction was vacated in part because the employee was prohibited from working on a competitive oil body shop business within five miles of 1,000 locations. Well in this case- But that was a non-compete case. Yes, it was. Dealing with the application of Georgia law- That is correct. On non-competes. So how does that apply here? There is a non-compete sub-provision within the consent judgment between the OU News and Smoothie King that prohibited my, or still does prohibit my client from operating any, operating within a five mile radius of any Smoothie King or future planned Smoothie King business throughout the entire country for up to two years. That's not the, I don't think that's the argument you want to be making because your client is not served by being tied to that restrictive covenant in the agreement signed by Mr. Oyanuga. Correct. We're just arguing that the scope of the injunction was overly broad. I think you're probably right about that. That's all I say. From my perspective. Yeah. I know I'm short on time, but if I may just address quickly the trademark claims. Sure. You've got a minute. Thank you. Thank you. I do want to acknowledge, and this is pretty clear on the record, there's a lot of back and forth about whether or not they're properly trademarks, but we would argue that they are. And we would just articulate that you can hone in on the plaintiff's theory for infringement by the question that Judge Ray asked, Smoothie King's key witness. Judge Ray said, if we just concentrate on the operation of the defendant's business, meaning the smoothie, the best smoothie business, is there evidence that you're aware of to support the contention that what they're doing is likely to cause a consumer to think that they're associated with Smoothie King or that Smoothie King somehow authorizes what they do? The witness says, the top general counsel lawyer says, looking at best smoothie in isolation, not that I'm aware of, document 25-7. So they didn't even make the argument that they were trying to have to prove the likelihood of confusion factors on the trademark claims. They took a position that because just Smoothie was infringing them by default through the third party, through this admonitio theory, somehow my clients were as well. All right. Thank you, Mr. Goins. And you saved your time for rebuttal. Mr. Charnas. Good morning. I may have pleased the court. My name is Adam Charnas, and I represent Smoothie King. The district court below issued a meticulous 60-page opinion after a bench trial. He made detailed, the district court made detailed factual findings, including numerous credibility determinations. And defendants simply disagree with those factual findings and those credibility determinations, but their disagreement does not show clear error, and nor do they show that the district court made any legal errors that would want reversal. So for these reasons, we ask the court to affirm. All right. I've got concerns about the injunction. Yes. The injunction seems to be to mirror the restrictive covenant in the agreement, the franchise agreement between your client and Mr. Oyanuga. This is not a restrictive covenant case. It's not a breach of contract case against these defendants. You have to be governed, the district court had to be governed by Rule 65, and the injunction had to be limited to take care of the harm that had been proven. So tell me how this nationwide injunction, nationwide in a different sort of sense, is appropriate. Yes. Two responses. First of all, they waive this argument. We propose this very injunction in our proposed findings of fact and conclusions of law after the bench trial. They did not object to it. They did not tell the district court that the scope of the injunction was too broad, either in time or geography or any other aspect. They didn't say a word about the scope of the injunction until after the court entered the injunction and they filed a motion to stay. And that was the first time that they said that this injunction, the Victomi injunction in this case, was too broad. So maybe that's forfeiture, but it's not waiver. They never agreed to it. Yes, Your Honor. Forfeiture is a better characterization. So that's our first argument, is they forfeited. It's not a live question for this Court. Second, I will quibble a little bit with the premise in your statement. The injunction in this case is a mirror of the injunction in the Oyenuga case. Our claims are that they violated the Oyenuga injunction. And as the district court explained in a footnote, it would make no — you know, the reason he — the district court entered the same injunction, essentially, on Victomi and Best Smoothie was because they were bound in privity with Oyenuga and Just Smoothie, and they had violated that injunction. And for that reason, it wouldn't make any sense to have a narrower injunction. But the first injunction was not based on a breach of injunction claim. It was based on the violation of the franchise agreement. Well, that's true, but no one — you can't — no one in this case can challenge the injunction in the Oyenuga case. No, but no one — no one can also say that that injunction in the first case needs to be replicated 100 percent in the second case, where the legal theories and defendants are different. Well, and the — So convince me why I'm wrong. Well, the third problem with their argument, in addition to forfeiture and what I just said, is that there's no real — the only thing they say is that this is a nationwide injunction that would keep us out of the smoothie business. There's no actual evidence of that. They didn't submit — look in their brief. There's no evidence about, for example, saying this means that only X percent of the population could be within five miles of the — How many — how many — how many stores does your client have nationwide? The client has several thousand stores, but that's — Across how many states? I believe it's 30-something states, Your Honor. Okay. I don't have that number right in front of me, but — but they need to come in with evidence that it actually has the effect that they're claiming. You have to first come in and justify the injunction, putting aside forfeiture. You have to come in and justify the injunction in the first place. An injunction has to be tailored to the harm proven.  He can't operate a smoothie business within five miles, not only of any existing location, but any planned Smoothie King location, for two years nationwide. How is he supposed to know where you're planning to open up a new franchise? Well, I agree that is the weakest part of the — So tell me, how does he — how does he figure that out? He's got to call you every month or send you a letter and say, hey, you planning on opening up anything new? Because I'd like to do something, but I don't want to breach the injunction. Right. I think we could — well, he could do that, or — And you'd give him all the information. Hey, we're opening a franchise with Joe Jones and Jane Jones, and it's going to be based here, and it's going to be here, and we think it's going to be great. Stay away. I think we certainly would not give him non-public information, but I think to the extent that there's public information about a planned store, I think you can interpret the injunction as applying in those circumstances. It's not what it says. I agree it's not what it says. It could have said that you have to give him notice of any planned opening, and now he has notice, and he can't try to operate any similar store within five miles for two years, but it doesn't say that. Right. No, I agree with that, Your Honor. But with respect to the broader criticism of the injunction, there's no meat on the bones for their argument. It was, as I say, it was taken from the Oyunuga injunction, because the district court found in dozens of pages of factual fighting, several dozen pages, that they participated with Mr. Oyunuga in the business before the injunction was entered, and that they basically continued the same conduct afterwards. So the district court applied the same injunction, and that made perfect sense, and there was no objection at the time to the But the claim here is not a breach of a franchise agreement, the way it was in the first case. It is that he violated the injunction of which he had actual notice, and that that constituted unfair business practices. Well, the claim was not breach of the franchise agreement. The claim was breach of the termination agreement. Okay, same thing. Well, because by breaching the termination agreement, you were able to bring in the non-compete. Well, in case number one. We were not enforcing the non-compete of the franchise agreement in case number one. What were you enforcing? We were enforcing the violation of the termination agreement, which in which he agreed not to compete. Same thing. It's a non-compete from a different contractual agreement. Yes. That's not the case here. You weren't dealing with the same legal claim. My only point is that there are different legal theories against different defendants based upon different violations at different periods of time. You can't transpose injunction one into injunction two automatically. Maybe you can do it under the facts of this case, but you just can't transpose one into the other. Well, I agree. Certainly, I agree you cannot automatically do it in every case, but here, the premise of our claim, of count one, was the violation of that, of the Oyenuga injunction, of the injunction in the first case. So I think it makes perfect sense to say, if you violated that injunction, then that injunction, the remedy for violation of that injunction is application of that injunction in case number two. And as I said, if they had come in with actual evidence to the district court or this court and said, this is, you know, they said, we can't operate a smoothie business. Well, we don't anywhere in the United States, and we don't really know that that's true. That's just lawyer argument. There's no evidence that that's true. You could have, you could easily have an expert come in and say, based on the stores, the locations of the stores, population density and so forth. But you didn't present any of that evidence on your own, right? We did not because they didn't make the objection. If they, Your Honor, if they had come in. No, no, no, no, no, no, no. You can decide on your own whether to put on evidence to support a request you're making to the court. Well, he's not stopping you from doing that. True. But the way lawyering usually works is, if your opponent doesn't say, this boxes me out nationwide from opening a smoothie franchise, there's no reason for us to commit. Sure it is, because you need to show that it's necessary. You need to show that the injunction is warranted and would be a proper exercise of discretion. And as you said, the district court had an evidentiary vacuum, both for his contention that he's boxed out, but more importantly, for your contention that you needed the injunction to be as broad as it was. Well, again, I think... For me, that's a concern. I understand. But I think what the district court was thinking was that he was basically enforcing the injunction in case number one. And that's why the injunction mirrored the injunction in case number one. Okay. I didn't want to derail you from your other argument, so thank you. No, Your Honor, I'm here to talk about what you're interested in, not what I'm interested in. So I do want to move briefly to the notice question. The whole notion of constructive notice is a red herring. Where constructive notice doesn't exist in the district court's opinion, constructive notice is an entirely different concept. Constructive notice is whether or not the party has notice of any sort, the law presumes notice in certain circumstances. So, for example, there's some premises liability doctrines that say if someone has been injured by a defect on the property once before, the property owner is constructively, is given constructive notice of the defect. That doesn't mean anything to do with actual notice. It's just a legal presumption. That's not what the district court here did. Judge Jordan, as I think you said, in several dozen pages of analysis, the district court found actual notice. It found actual notice based on circumstantial evidence. And the law is, I think, crystal clear that circumstantial evidence is real evidence, can be real evidence and sufficient evidence of actual notice. People can, as the Supreme Court has said, people can be sent to the death, given the death penalty, based on circumstantial evidence. A fortiori notice of an injunction could be provided by circumstantial evidence. And the district court here spent considerable time explaining exactly why it believed that Victomi and the other defendants had notice of the injunction. If you actually required a party to come in and say, yes, I knew, or a document that said, hereby notice is provided, you would almost never have actual notice. That's not the way the world works. People, particularly when they are acting behind the scenes, to violate an injunction, they tend to be a little bit careful. And, you know, my friends said that the district court conflated the notice issue with the privity issue. We explained this in our brief, that the court did not do that. The evidence that showed actual notice was largely the same evidence that showed privity. Because these defendants were so heavily involved in the Just Smoothie business in the spring, the first half of 2020, that provided the basis for privity as well as notice. The district court separately addressed the arguments of requirements of privity and notice. There's no indication that he misunderstood anything about that. You know, ATT is a case that requires actual notice. It says nothing about circumstantial evidence. On the unique facts of that case, the court found that there was no notice, no actual notice, circumstantial or otherwise. But that says nothing about this case and about the facts of this case, and certainly does not require that there be circumstantial. That circumstantial evidence is not sufficient evidence of actual notice. There's not a single case that they've cited that we've seen that says that circumstantial evidence is categorically unacceptable to prove actual notice of an injunction under Rule 65. Happy to answer any other questions that the court has. Otherwise, we ask the court to affirm. All right, thank you very much. Thanks. So counsel is correct. There's a lot more dicta in cases about what actual notices means in the premise liability concept. And sure enough, we did cite to a couple of cases in our reply brief, Martin, Vienna versus Rural Caribbean Cruises out of the Southern District of Florida, noting that the quote, the 11th Circuit observed there was no evidence to establish actual notice and circumstantial evidence without more did not suffice. Close quote. There's also a Texas case involving Walmart, Slip and Fall, says while circumstantial evidence is often used to infer constructive notice, the circumstantial evidence alone is insufficient to establish actual notice. So there's that point that we want to make as to the injunction. We did not waive it. We said it didn't apply to them. And there's about five or six different provisions. So I don't know how the time would permit with a five-day trial for us to go through excruciating detail line by line, every single part of the language in which we disagree with. Instead, we said we disagree with the injunction as a whole. Courts also routinely, sua sponte, have the right to enforce or vacate injunctions whether or not it was raised. We cite to a Fourth Circuit case from 2023 that says that. Sue versus Medical Staff of America LLC. Another point about, well, I didn't get a chance to discuss this, but I did want to make sure that I at least highlighted this. This court can exercise, pen and appellate jurisdiction to go ahead and decide that attorneys fees should not have been awarded in this being an exceptional case under the Lanham Act. Judge Ray, in about two-line sentence, says somehow this case was exceptional. Even though at the end of trial, he said both sides are to be commended. Both sides had great strenuous litigation positions. Yes, you want to challenge my client's credibility, fine. But there was nothing in the record that spoke to vexatious, frivolous conduct that would warrant putting a small mom-and-pop store out of business. But the district court hasn't determined the amount of fees, right? Not the amount, no. But you have the right, actually, to under pendant jurisdiction to say that the amount should not have been awarded because his grounds for doing so are intertwined with the merits. Challenging the defendant's intent, that's an element of likely confusion factors. Challenging privity. Privity is another argument that Judge Ray made as to why he thought this case was exceptional. Well, if you find that there's no privity as to the non-party consent judgment claim, then you already have the analysis you need to go in and say this was not an exceptional case, such that an attorney should have been awarded. And then lastly, I just want to make sure everybody understands this. Fair use defense is an absolute defense. And so you don't even have to go through the analysis of likely confusion factors if you don't want. And if you look at the seven product names that the judge found to be infringing, the majority of them are incorporating fruit names that plaintiff themselves have already acknowledged are descriptive. But your client used those names for economic gain and the district court found that they were sufficiently close to the other names that you were trading off. Why isn't that enough? Sure, because we had contrary evidence. No, but the district court didn't buy it. Well, we still think there needs to be substantial evidence and we think the opposite was actually proven at trial. We actually went out of our way to prove that there was not infringement. We had an online consumer survey expert, Dr. Tom Moronic, who testified at trial that there was no confusion. And he conducted a standard two room squirt survey that's been adopted by the 11th Circuit. We also have plaintiff's own witnesses, Channing Gewinner, as well as Josh Nicosia, who's sitting here today. They both acknowledged in the competitive business of smoothies, you incorporate a descriptive name. So if somebody wants to walk in and get a strawberry banana, there's a reason why there's going to be a berry or a banana incorporated into the name itself. It's descriptive. That's fair use defense. But it wasn't just the name of the fruit. It was that you were, according to the district court, that you were playing off of the other modifier or adjective with the name of the smoothie in question. Without any proof of actual confusion or some of the other factors that are required of likely confusion factors. But yes, that is what he decided. And we would submit that that order should be vacated. Okay. Thank you both very much. Thank you. All right. We're in recess until tomorrow morning.